## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

RODNEY WILLIAM LIGHTFOOT,     )
                                     )

       Plaintiff,                    )
                                       )

v.                                    )           Civil Action No. 3:22CV615–HEH
                                       )

CLENT D. DAVIS, *et al.*,       )
                                       )

       Defendants.              )

## MEMORANDUM OPINION
### (Granting Defendants' Motion for Summary Judgment)

Rodney William Lightfoot filed this 42 U.S.C. § 1983 action. The matter is proceeding on Lightfoot's Amended Complaint. (ECF No. 43.)[1] Defendants have moved for summary judgment on the ground that Lightfoot failed to exhaust his administrative remedies. (ECF No. 50.) The Court provided Lightfoot with the appropriate *Roseboro* notice on September 11, 2024. (ECF No. 55.) Lightfoot has responded. (ECF Nos. 64, 69.) Defendants moved for an extension of time to file their Reply. Upon good cause shown, *see* Fed. R. Civ. P. 6(b)(1)(A), the Motion for Extension of Time (ECF No. 66) will be granted and the Court will consider Defendants' Reply (ECF No. 68). For the reasons set forth below, the Motion for Summary Judgment will be granted.

---

[1] By Memorandum Opinion and Order, the Court dismissed all claims against Defendants Brown, Tucker, and Brown without prejudice because Lightfoot failed to timely serve them. (ECF No. 59, 60.)

## I. Summary of Allegations and Claims

Lightfoot alleges on June 25, 2022, while incarcerated in Nottoway Correctional Center ("NCC"), he was slashed several times with a razor knife by fellow inmate Domonic Hendrix. (ECF No. 43, at 3.)[2] After receiving medical treatment at an outside hospital, Lightfoot was returned to NCC and placed in a restricted housing unit. (*Id.* at 3–4). On June 29, 2022, Lightfoot was returned to general population and learned that he had been terminated from his position as a recreational aide. (*Id.* at 4.)

Shortly after his return to general population, Lightfoot was assaulted "by a member of the same gang that ordered the first attack." (*Id.*) Lightfoot was placed back in the restricted housing unit. (*Id.*) Although Hendrix had briefly been placed in the restricted housing unit, he soon was released to general population. (*Id.*) Lightfoot's second assailant remained in general population. (*Id.*) Lightfoot was required to choose between returning to general population or accepting a transfer to another institution, which he felt was fundamentally unfair because he was the victim. (*Id.*)

Based on the foregoing allegations, Lightfoot makes the following general claims:

Claim One    Defendants Tucker, Fowlkes, Williams, and Brown violated Lightfoot's Eighth Amendment rights when they allowed him to be attacked on June 25, 2022. (ECF No. 43, at 5.)

Claim Two    Defendants Gardner, Speede, Jackson, and Campbell denied Lightfoot due process when they allowed Lightfoot to be terminated from his position as a recreational aide. (*Id.* at 7.)

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions.

Claim Three  Defendants Williams, Tucker, Fowlkes, and Speede violated
Lightfoot's Eighth Amendment rights when they allowed him to be
assaulted a second time. (*Id.*)

## I. Standard of Review

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442,

448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants ask the Court to dismiss Lightfoot's claims because Lightfoot failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As relevant here, in support of their Motion for Summary Judgment, Defendants submitted: (1) the affidavit of R. Stokes, the Grievance Coordinator at NCC (ECF No. 51-1, at 1–6); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 51-1, at 7–22); and, (3) a record of Lightfoot's grievance related material (ECF No. 51-1, at 23–42).

Lightfoot has responded to the Motion for Summary Judgment by filing a "Memorandum in Support of Plaintiff's Defense for Summary Judgment," ("Memorandum in Opposition," ECF No. 64) and a Reply (ECF No. 69). Neither the

4

Reply nor the Memorandum in Opposition constitute admissible evidence.[3]  However,

Lightfoot attached to the Memorandum in Opposition a variety of grievance related

material that the Court refers to by their CM/ECF designation.  In addition, Lightfoot's

Amended Complaint is sworn to under penalty of perjury.

In light of the foregoing principles and submissions, the following facts are

established for the purposes of the Motions for Summary Judgment.  All permissible

inferences are drawn in favor of Lightfoot.

## II.  Relevant Facts

### A.  Grievance Procedure at the Virginia Department of Corrections

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance,

the inmate must demonstrate that he or she attempted to resolve the issue through the

informal complaint process.  *See* Operating Procedure § 866.1.I.D.1–4.  "The first step in

the informal complaint process is for the offender to discuss their issue with staff for a

quick resolution."  *Id.* at § 866.1.I.D.1.  If the issue is not resolved by an oral discussion,

the offender should submit a *Written Complaint. Id.* § 866.1.I.D.2.  Prison staff have

fifteen days from receipt of the *Written Complaint* to provide an appropriate written

---

[3] The Reply has no jurat indicating it was sworn before a notary, instead, the document was merely acknowledged before a notary. (ECF No. 69, at 4.) An acknowledgment is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn as to the truth of the contents of the document.  In an acknowledgment, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that jurat uses words "subscribed and sworn" and demonstrates an oath was administered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009). Thus, the Reply fails to constitute admissible evidence.

response. *Id.* § 866.1.II.B.4. "If the issue on the *Written Complaint* is not resolved to the satisfaction of the offender, or staff fail to provide a written response within 15 days, the offender may file a *Regular Grievance* . . . . The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* § 866.1.I.D.4.

## 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* § 866.1.III.C.3&4. "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section of the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* § 866.1.III.C.4. "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* § 866.1.III.C.5.

## 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." *Id.* § 866.1.III.C.3. Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. *Id.* § 866.1.III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the offender unless a continuance is authorized." *Id.* § 866.1.III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* § 866.1.IV.A.  The appeal must be submitted within five days of receipt of the *Offender Grievance Response.  Id.* § 866.1.IV.B.2.  Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the  Regional Administrator. *See id.* § 866.1.IV.C.1.a–e.

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* § 866.1.V.B.

### B.  Lightfoot's Grievance Material

On June 26, 2022, Lightfoot attempted to file a written complaint regarding being attacked on June 25, 2022. (ECF No 51-1, at 40.)  Lightfoot was advised that he had used the wrong form and directed to "resubmit on the revised form attached." (*Id.*) Lightfoot never resubmitted his complaint on the correct form. (*Id.* at 5.)

On June 27, 2022, Lightfoot filed an emergency grievance regarding not receiving his pain medication and the failure to change his bandage. (*Id.* at 5–6.)  The grievance was deemed not to be an emergency, but he was seen in his cell on June 28. (*Id.* at 6.)

On September 26, 2022, Lightfoot filed a written complaint wherein he stated that he had filed a written complaint on September 15, 2022, but had not heard anything

7

regarding that complaint. (*Id.* at 42.) Additionally, Lightfoot claimed that he was attacked again on September 11, 2022, by an inmate with a lock. (*Id.*) On October 4, 2022, Lightfoot withdrew this complaint. (*Id.*)

On or about September 26, 2022, Lightfoot submitted a facility request wherein he stated: "I've submitted a couple of written complaint[s] that I haven't received back. Ass't Warden Maurice, Chief of Housing and Intell Marshall. I haven't gotten no responses to go with my grievance procedure. If you will get back with me soon." (ECF No. 64-1, at 8.) On September 26, 2022, staff responded: "The Grievance Department has not received any written complaints to log as of 9/26/22. Please submit your complaint on the written complaint I have attached. I received a regular grievance, but I am returning it because it is on the incorrect expired form. But you must first submit a written complaint before a regular grievance." (*Id.*)[4]

Although Lightfoot has submitted numerous grievances during his incarceration, (*see, e.g.*, ECF No. 51-1, at 23–39), Lightfoot failed to submit any grievance pertaining to the claims raised in this action that was accepted at intake and appealed to the highest eligible level prior to filing this lawsuit. (ECF No. 51-1, at 6.)

---

[4] Lightfoot submitted a copy of that returned grievance on the expired form in his opposition to the Motion for Summary Judgment. (ECF No. 64-1, at 7.)

### III. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Nevertheless "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v.*

9

*Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). The record does not suggest that any of the above factors rendered administrative appeals unavailable to Lightfoot.

Lightfoot has failed to file any grievance related to the events in his Amended Complaint that was accepted at intake and processed through all available appeals. Accordingly, he has failed to exhaust his administrative remedies. The Motion for Summary Judgment (ECF No. 50) will be granted. The action will be dismissed.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/

Date: March 24, 2025
Richmond, Virginia

Henry E. Hudson
Senior United States District Judge